567 So.2d 228 (1990)
MISSISSIPPI STATE TAX COMMISSION, C.A. Marx, Chairman and Commissioner of Revenue, and Nicki Martinson and William A. Wilkerson, Associate Commissioners
v.
TRAILWAYS LINES, INC., Midwest Bus Lines, Inc., Trailways Southern Lines, Inc., and Trailways Tennessee Lines, Inc.
No. 07-CA-58995.
Supreme Court of Mississippi.
August 22, 1990.
Gary W. Stringer, Bobby R. Long, Jackson, for appellants.
Harold D. Miller, Jr., E. Marcus Wiggs, III, Butler Snow O'Mara Stevens & Cannada, Jackson, for appellees.
Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
HAWKINS, Presiding Justice, for the Court:
The Mississippi State Tax Commission appeals from a judgment of the chancery *229 court of the First Judicial District of Hinds County requiring it to refund $1,295,104.08 in taxes and penalties. The amount of the judgment consisted of:
(1) two assessments against Trailways: one totaling $571,223.19 and the other totaling $348,900.34; and
(2) a refund claimed by Trailways totaling $374,980.55.
We find that the chancery court erred in requiring the Mississippi State Tax Commission to refund the second assessment of $348,900.34, and in holding that Trailways was entitled to the refund claim of $374,980.55. We, therefore, affirm in part, and reverse and render in part.

FACTS
On September 3, 1974, Mississippi entered the International Registration Plan. (hereinafter IRP) The IRP was adopted by the Motor Vehicle Comptroller (hereinafter MVC) under the authority of Miss. Code Ann. § 27-19-143 (Supp. 1974).[1]
The IRP is a multi-state proportional registration agreement for vehicles. Under the IRP, vehicle registration fees are apportioned among the member states in which the vehicle travels. The fees paid to each state are based on an apportionment formula. The formula is determined by computing the percentage of miles traveled in the state as compared to the total miles traveled throughout the country. For example, if a vehicle traveled a total of 10,000 miles and 1,000 of those miles were in Mississippi, the apportionment formula would be 10%. Thus, the owner of the vehicle would be required to pay 10% of the registration fee normally due in Mississippi.
Prior to the adoption of the IRP, a vehicle traveling through Mississippi was required to pay the full registration fee unless the State had a reciprocity agreement with the vehicle's base jurisdiction. If a reciprocity agreement existed, the vehicle paid the full registration fee due in its base jurisdiction, and Mississippi received nothing.
Reciprocity agreements with respect to passenger buses liable for the gross receipts *230 tax under § 27-19-7,[2] however, were not allowed. Miss. Code Ann. § 27-19-143. Thus, prior to the adoption of the IRP, Trailways had to pay the full registration fee for each of its buses traveling in Mississippi.
On May 21, 1975, the MVC requested an opinion from the Attorney General as to whether § 27-19-143 allowed the State of Mississippi to enter into a proportional registration agreement with respect to passenger buses.
The first and third paragraphs of § 27-19-143 specifically exclude passenger buses. The Attorney General, however, in an opinion dated June 26, 1975, stated that "the `exception' contained in the first paragraph is not included specifically or by implication in the second paragraph." Thus, the Attorney General concluded that the second paragraph would allow Mississippi to enter into a proportional registration agreement with respect to passenger buses.
As a result, the MVC applied the IRP to passenger buses. The IRP allowed fleets of buses to apportion fees among the member states according to the proportion of total miles traveled in each jurisdiction.
Under Miss. Code Ann. § 27-19-7(1) (1972), buses paid $150 each for "an annual highway privilege tax as reasonable compensation for the use of the highways of this state[.]" Also, under Miss. Code Ann. § 27-19-7(2) (1972), buses paid a "highway privilege license tax ... equal to three percent of the gross revenue derived from the operations of such carrier within the state[.]" The tax levied under § 27-19-7(2), however, was only paid to the extent that it exceeded that levied under § 27-19-7(1).
Once IRP was adopted, the $150 fee was apportioned. Thus, the full fee was not paid by buses operating in more than one jurisdiction. On March 22, 1976, Greyhound informed the MVC that it was going to take the full $150 per bus credit under § 27-19-7(2) even though it did not pay the full $150 per bus fee under § 27-19-7(1). On May 6, 1976, the MVC informed Greyhound that it could take the full credit even though it did not pay the full fee.
Until July 1, 1980, the assessment and collection of these taxes was under the jurisdiction of the MVC. Beginning July 1, 1980, the MVC was abolished and these duties were transferred to the Mississippi Tax Commission [hereinafter Commission].
In 1981, the Commission audited the returns of Greyhound. It discovered that Greyhound was taking credit for the full $150 per bus fee levied under § 27-19-7(1) even though it was not paying the full amount. Although the Commission agreed *231 that the $150 fee should be apportioned, it did not agree that credit should be given for the amount not paid. Thus, the Commission assessed Greyhound for the unpaid taxes. Greyhound, however, notified the Commission that the MVC approved of its methods by providing the Commission with the MVC's letter of May 6, 1976.
The Commission rescinded the MVC's approval, but it permitted Greyhound to rely on the MVC's advice for the tax periods under investigation. Afterwards, Greyhound adhered to the methods set by the Commission.
In January of 1983, the Commission audited Trailways' records. According to the Commission, the credits taken under § 27-19-7(2) were greater than those paid under § 27-19-7(1). Thus, the Commission assessed Trailways for additional taxes in the amount of $519,293.81 with interest of $51,929.38 for a total of $571,223.19. The assessment related to the tax periods of January 1, 1980 through September 30, 1982.
Trailways objected to the assessment. Furthermore, Trailways argued that IRP should also apply to the computation of the gross revenue tax under § 27-19-7(2). Thus, on May 26, 1983, Trailways filed a refund claim of $374,980.55 for taxes paid during the same periods covered by the Commission's assessment. The refund was computed by applying IRP to both § 27-19-7(1) and § 27-19-7(2).
On May 31, 1983, the Commission's Board of Review held a meeting in which the auditor's assessment was reviewed. An order was entered by the Board of Review on June 15, 1983, which affirmed the auditor's assessment and denied the requested refund.
Trailways appealed the decision to the Commission. On August 17, 1983, a hearing was held before the Commission. On September 1, 1983, the Commission affirmed the findings of the Board of Review.
While the administrative procedures were pending, the Commission conducted a second audit and assessed additional highway privilege taxes for the quarters ending January 31, April 30, July 31, and October 31, 1983. During these quarters, Trailways continued to apply IRP to both sections of § 27-19-7. The assessment including penalties totaled $348,900.34. The second assessment was later revised to reflect a total tax and penalty of $338,492.83. This was paid by Trailways under protest.[3]
On April 25, 1984, the Commission requested an opinion from the Attorney General to determine whether Mississippi had the authority to enter into a proportional registration agreement with respect to buses. The Attorney General came to the conclusion that § 27-19-143 did not give Mississippi the authority to enter into such agreements, and overruled its previous decision of June 26, 1975.
The Attorney General's opinion held that the second paragraph of § 27-19-143 did not "authorize a proportional registration agreement with other states" with respect to passenger buses. According to the opinion, the term "commercial vehicle" included in the second paragraph of the statute does not include passenger buses according to its definition. Miss. Code Ann. § 27-19-3(2) (Supp. 1976).
Sections 27-19-7(1) and 27-19-7(2) of Miss. Code Ann. have been amended. Currently, passenger buses are only required to pay $50 each, and there is no credit allowed against the gross revenue tax. The amendments, however, were passed after the tax periods in question.
Trailways challenged the findings of the Commission by filing suit pursuant to § 27-19-337. The Chancery Court of the First Judicial District of Hinds County, Paul G. Alexander, presiding, entered a judgment in favor of Trailways in the amount of $1,295,104.08. The Commission appealed the judgment to this Court.

*232 LAW
The first question which must be determined is whether the State of Mississippi had the authority to enter into the IRP with respect to passenger buses. The only authority of the MVC to adopt the IRP was through § 27-19-143. Plain reading of the statute grants no authority whatever for the MVC to enter into proportional registration agreements with respect to passenger buses.
We are aware that administrative agencies have only such powers as are expressly granted to them or necessarily implied, and any such power exercised must be found within the four corners of the statute under which the agency operates.
Strong v. Bostick, 420 So.2d 1356, 1361 (Miss. 1982).
According to the prior case law of this State, if the language of a statute is plain and unambiguous, "there is no room for construction." Clark v. State ex rel. Miss. State Med. Ass'n, 381 So.2d 1046, 1048 (Miss. 1980).
It is a well recognized principle of law in this State that ambiguity must exist in the language used by the Legislature in a statute before resort will be had to any rules of statutory construction or interpretation. Without ambiguity, the controlling law of this State requires that the Court look no further than the clear language of the statute and apply it.
Forman v. Carter, 269 So.2d 865, 868 (Miss. 1972).
Where the language used by the legislature in a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion to resort to rules of statutory interpretation.
Mississippi Power Co. v. Jones, 369 So.2d 1381, 1388 (Miss. 1979).
[A]rcane rules of construction ... are appropriate only where the words of the statute are ambiguous.
Pinkton v. State, 481 So.2d 306, 309 (Miss. 1985).
The first paragraph of § 27-19-143 provides that the MVC can enter into reciprocity agreements "concerning the operation of all motor vehicles, except common or contract carriers of passengers liable for gross receipts tax under Section 27-19-7[.]" The exception language includes passenger buses operated by Trailways. Thus, the MVC is not empowered to enter into reciprocity agreements involving passenger buses.
The second paragraph of § 27-19-143 provides that the MVC can enter into agreements "relating to the proportional registration of commercial vehicles in interstate or combined interstate and intrastate commerce." [Emphasis added] Passenger buses, however, are not included in the definition of "commercial vehicles."[4]
*233 Finally, the third paragraph of § 27-19-143 also excludes passenger buses operated by Trailways. It provides that "the terms of all reciprocity agreements or compacts entered into under the provisions of this section shall, insofar as they relate to ... common or contract carriers of passengers not liable for the gross receipts tax under Section 27-19-7 hereof, be based upon the terms and provisions of Sections 27-61-1 to 27-61-29[.]" Trailways was liable for the gross receipts tax under § 27-19-7.
It is thus clear from the language of the statute that it contained no authority for the MVC to enter into such agreements with respect to passenger buses. The Attorney General's opinion of May 21, 1984, was manifestly correct.
Regardless of the plain and unambiguous language, the MVC and the Commission have applied the IRP, although inconsistently, to passenger buses since 1975 pursuant to § 27-19-143. This Court, however, is not bound by these agencies' erroneous construction of § 27-19-143.
When the construction placed upon a statute by an administrative department of the government is clearly erroneous, and has not been followed by it for a long time, or where the administrative department, at various times, places different constructions upon the statute, the Court will not adhere to such constructions when, in its opinion, they are erroneous. See Virden v. State Tax Commission, 180 Miss. 467, 177 So. 784. While it is proper for the Court to follow a reasonable construction, long used or practiced by the administrative officers of the law, to the end that there shall be no unnecessary hardship upon the taxpayers, yet, where it is of the opinion that such construction is not proper, it must reach its own conclusions. [Emphasis added]
Mississippi Cottonseed Products Co. v. Stone, 184 Miss. 409, 422, 184 So. 428, 431-32 (1938), cert. denied, 306 U.S. 656, 59 S.Ct. 774, 83 L.Ed. 1054 (1939).
The second question to be determined is to what extent should the State be bound by the MVC's and the Commission's previous rulings.
Both the MVC and the Commission applied the IRP to passenger buses. The MVC apportioned the $150 per bus registration fee levied under § 27-19-7(1) and allowed a full $150 per bus credit against the gross receipts tax levied under § 27-19-7(2). When the Commission took over the MVC's duties, it continued to apportion the fee under § 27-19-7(1), but it refused to allow the full $150 per bus credit against the gross receipts tax under § 27-19-7(2). It only allowed a credit equal to the amount actually paid under § 27-19-7(1).
Since this Court has determined that § 27-19-143 does not permit the application of the IRP to passenger buses, Trailways cannot claim the full credit under § 27-19-7(2) after the Commission notified Trailways that it was no longer going to allow the full credit. Thus, the lower court's ruling with respect to the second assessment of $338,492.83 should be reversed. This Court holds Trailways liable for the full assessment.
Furthermore, neither the MVC nor the Commission applied the IRP apportionment formula to the gross receipts tax under § 27-19-7(2). This Court holds that Trailways is not entitled to the refund claim of $374,980.55 arising from such application. Thus, the lower court's ruling with respect to the refund is reversed.
We do not, however, hold Trailways liable for the first assessment of $571,223.19. Trailways and Greyhound relied on the ruling and representations of the MVC. The Commission allowed Greyhound to rely on the MVC's ruling until it was given notification that the Commission was not going to allow the full credit. Trailways should be given the same treatment. The Commission is estopped from collecting the tax since Trailways relied on the ruling of the MVC. Monroe County Bd. of Educ. v. Rye, 521 So.2d 900, 908-09 (Miss. 1988). Taxation must be "equal" and "uniform;" to hold otherwise would be unconscionable. Miss.Const. art. IV, § 112. See Calhoun *234 County Bd. of Supervisors v. Grenada Bank, 543 So.2d 138 (Miss. 1988); American Nat. Ins. Co. v. Bd. of Supervisors of Harrison County, 303 So.2d 457 (Miss. 1974). Thus, the chancery court's ruling with respect to the first assessment is affirmed.
Judgment of the lower court is affirmed as to the first assessment of $571,223.19; and is reversed and rendered as to the refund claim of $374,980.55 and the second assessment of $348,900.34.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
PITTMAN, J., not participating.
NOTES
[1] § 27-19-143. Reciprocity agreements.

The Motor Vehicle Comptroller, the Attorney General and the Governor are hereby authorized and empowered to negotiate, enter into, and promulgate reciprocity agreements and compacts with other states and the Dominion of Canada, through their respective enforcement divisions, concerning the operation of all motor vehicles, except common or contract carriers of passengers liable for gross receipts tax under Section 27-19-7 of this article, properly registered in such other state upon and over the public highways of the State of Mississippi, in foreign or interstate commerce, without the payment of the privilege license tax provided for in this article, provided that the state with which such agreement is entered into extends like privileges properly registered in the State of Mississippi; and provided, further, that such agreements or compacts shall not suspend any laws, rules or regulations of this state other than the requirements of the payment of the privilege license tax provided for in this article by residents of such other states.
It is further provided that the Motor Vehicle Comptroller, the Attorney General and the Governor may likewise enter into agreements with the duly authorized representatives of other jurisdictions relating to the proportional registration of commercial vehicles in interstate or combined interstate and intrastate commerce. The apportionment may be made on a basis commensurate with and determined on the miles traveled on and use made of the highways of this state as compared with the miles traveled on and use made of other jurisdictional highways or any other equivalent basis of apportionment. The Motor Vehicle Comptroller, the Attorney General and the Governor may adopt and promulgate such rules and regulations as shall be necessary to effectuate and administer the provisions herein contained.
It is further provided that the terms of all reciprocity agreements or compacts entered into under the provisions of this section shall, insofar as they relate to common or contract carriers of property, private commercial carriers of property, or common or contract carriers of passengers not liable for the gross receipts tax under Section 27-19-7 hereof, be based upon the terms and provisions of Sections 27-61-1 to 27-61-29, and no person shall be entitled to the benefit of the terms and provisions of such agreements and compacts unless and until he fully complies with the requirements, terms and provisions of said Sections 27-61-1 to 27-61-29. The Motor Vehicle Comptroller, Attorney General and Governor shall have the power to cancel and abrogate any agreements or compact entered into under the terms of this section or under any other law theretofore effective, by giving thirty (30) days' notice, in writing, to the enforcement authority of the state with which such agreement was entered into.
[2] § 27-19-7. Tax on common carriers of passengers.

(1) On each common carrier of passengers or contract carrier of passengers which is required by law to qualify with and obtain a certificate of public convenience and necessity, or permit, from the Mississippi Public Service Commission, there is hereby levied an annual highway privilege tax as reasonable compensation for the use of the highways of this state, upon each motor vehicle used in the operation of the business of such common or contract carrier of passengers, of one hundred fifty dollars.
(2) In additions thereto, there is hereby levied and imposed a highway privilege license tax upon each such common or contract carrier of passengers equal to three percent of the gross revenue derived from the operations of such carrier within the state, provided that the said additional tax of three percent shall not be collected unless and until and only to the extent, that it exceeds the annual license tax of one hundred fifty dollars levied above. When any carrier shall operate partly within and partly without this state, the gross revenue of such carrier within this state shall be deemed to be all receipts of the operations of such carrier beginning and ending entirely within this state, and the proportion, based upon the proportion which the route mileage of the carrier within this state over which business is done bears to the entire route mileage of such carrier over which business is done, of the receipts of all business passing through, into or out of this state. When any such common or contract carrier shall operate more than one vehicle in this state, then the liability for such gross receipts tax of three percent shall not accrue unless and until, and only to the extent that such gross receipts tax exceeds the aggregate of the annual license tax of one hundred fifty dollars, levied in subparagraph (a) hereof, paid by such carrier on all vehicles operated by him in this state. The gross revenue tax hereby levied shall be payable to the comptroller at the time and in the manner, and subject to the penalties prescribed in sections 27-19-105 to XX-XX-XXX.
[3] Although the exhibits showed that Trailways only paid the revised assessment of $338,497.83, the judgment of the chancery court found that Trailways was entitled to a refund of $348,900.34 with respect to the second assessment. The record is not clear on this matter. Even so, this Court finds that Trailways is not entitled to a refund of this money as discussed below.
[4] § 27-19-3. Definitions.

* * * * * *
(2) "Commercial vehicle" shall mean every vehicle used or operated upon the public roads, highways or bridges in connection with any business function except that of a common carrier or a contract carrier as herein defined.
* * * * * *
(20) "Common carrier by motor vehicle" shall mean any person who or which undertakes, whether directly or by a lease or any other arrangement, to transport passengers or property or any class or classes of property for the general public in interstate or intrastate commerce on the public highways of this state by motor vehicles for compensation, whether over regular or irregular routes. Not including, however, passenger buses and drays operating within the corporate limits of a municipality in this state or not exceeding five (5) miles beyond the corporate limits of said municipality, and hearses, ambulances, school buses as such. In addition, this definition shall not include taxicabs operating wholly within the corporate limits of a municipality or not exceeding twenty (20) miles beyond the corporate limits of such municipality.
(21) "Contract Carrier by motor vehicle" shall mean any person who or which under the special and individual contract or agreements, and whether directly or by a lease or any other arrangement, transports passengers or property in interstate or intrastate commerce on the public highways of this state by motor vehicle for compensation. Not including, however, passenger buses and drays operating within the corporate limits of a municipality in this state or not exceeding five (5) miles beyond the corporate limits of said municipality, and hearses, ambulances, school buses as such. In addition, this definition shall not include taxicabs operating wholly within the corporate limits of a municipality or not exceeding twenty (20) miles beyond the corporate limits of such municipality.